# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID OPENSHAW, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **Counterclaim Defendant,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 06-CV-1884(CKK)** |
| ) | |
| **CONSOLIDATED ENGINEERING** ) | |
| **SERVICES, INC., et al.** ) | |
| ) | |
| **Defendant,** ) | |
| **Counterclaim Plaintiff** ) | |
| **Third-Party Plaintiff.** ) | |
| ) | |

## PLAINTIFFS' RULE 26(a)(2) DISCLOSURES

Pursuant to Fed. R. Civ. P. 26(a)(2), Plaintiffs David Openshaw and Lily Openshaw, individually and as guardians of Sophia Openshaw and Regina Openshaw, by undersigned counsel, hereby disclose to all parties the identities and opinions of the following expert witnesses whom they anticipate will be called to testify on their behalf at the trial of this matter: Larry D. Smith, M.S.E.M., C.F.E.I. and B. Scott Teunis, M.D., F.A.C.S.

Larry D. Smith, M.S.E.M., C.F.E.I., a mechanical engineer and fire origin and cause analyst, is expected to provide expert testimony concerning, *inter alia*, the responsibilities and duties of the parties in maintaining the steam distribution complex that is the subject of this litigation, whether those responsibilities and duties were breached, and the cause of the incident giving rise to this litigation. A copy of Mr. Smith's written report is attached hereto as Exhibit 1 and incorporated herein per the requirements of Rule 26(a)(2)(B).

B. Scott Teunis, M.D., F.A.C.S., a board-certified plastic surgeon, is expected to provide expert testimony regarding, *inter alia*, the cause and extent of Sophia Openshaw's injuries, the necessity of the medical care she received, and the amount of and reasonableness of the costs related thereto, as well as the cause, extent, and permanency of Sophia Openshaw's aesthetic injuries arising from the incident giving rise to this litigation. A copy of Dr. Teunis' written report is attached hereto as Exhibit 2 and incorporated herein per the requirements of Rule 26(a)(2)(B).

Each of the aforementioned reports is based upon the factual information available, and thus may require supplementation to the extent that additional pertinent information is produced or discovered.

Plaintiffs reserve the right to offer qualified opinion testimony from individuals who provided medical services to Sophia Openshaw, but have not been retained by Plaintiffs to provide expert testimony in this case. These individuals were identified in Plaintiffs' Initial Disclosures, as well as in the medical records produced by Plaintiffs to the parties.

Plaintiffs also reserve the right to designate rebuttal expert witnesses in response to the designations of testifying expert witnesses by the parties. Plaintiffs also reserve the right to call

to testify at trial, and/or to rely on the testimony or report(s) of, any expert witness(es) designated

by any of the Defendants.

Respectfully submitted,

DAVID OPENSHAW


By:     /s/ Peter C. Grenier
        Peter C. Grenier (D.C. Bar No. 418570)
        Bode & Grenier, L.L.P.
        1150 Connecticut Avenue, N.W.
        Ninth Floor
        Washington, D.C.  20036
        (202) 828-4100
        (202) 828-4130 (fax)
        *Counsel for Plaintiffs*


Dated: June 15, 2007

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of June, 2007, I served a true and correct copy of the foregoing Plaintiffs' Rule 26(a)(2) Disclosures by electronic filing and first class mail upon:

Mary Malloy Dimaio, Esquire
Law Office of Maher & Associates
502 Washington Avenue
Suite 410 – Nottingham Centre
Towson, MD 21204
*Counsel for Third-Party Defendant Day and Zimmerman Services, Inc.*

David D. Hudgins, Esquire
Hudgins Law Firm
515 King Street, Suite 400
Alexandria, Virginia  22314
*Counsel for Defendant/Counter-Plaintiff/Third-Party Plaintiff*
*Consolidated Engineering Services, Inc.*

Diane M. Sullivan, Esquire
Assistant U.S. Attorney
555 Fourth Street, N.W.
Room E4919
Washington, D.C.  20530
*Counsel for Third-Party Defendant the United States of America*


/s/ Peter C. Grenier
Peter C. Grenier



# Openshaw v. Consolidated Engineering
## Steam Accident Analysis

Larry D. Smith
Mechanical Engineer

CED/AAI Case No.: 6761.1
Report

June 13, 2007

CHESAPEAKE ENGINEERING & DESIGN, INC.
ACCIDENT ANALYSIS, INC.

# Table of Contents

Introduction ...........................................................................................2
Background ...........................................................................................2
Summary ...............................................................................................2
CED/AAI's Investigation ........................................................................3
  Documents Reviewed ........................................................................3
Review of Written Materials...................................................................4
  Contract (Solicitation No. GS-11P-01-YMC-0085, dated 5/25/2001)...........4
  ASME/ANSI B31.1, *Power Piping*, 2004 edition ...............................6
  Other Discovery Material ...................................................................8
    Initial Disclosures from Consolidated Engineering Services, Inc. ..............8
    Work Orders for Manhole 41 ..........................................................9
    Columbia Engineering, Inc. drawing for steam pipe anchor – MH 41 ..10
    American Combustion Industries, Inc. – Job Ticket 125853, dated 5/7/05 ...........................................................................................10
Inspection.............................................................................................10
Discussion ...........................................................................................12
Conclusions.........................................................................................16
Attachment A – Curriculum Vitae .......................................................18
Attachment B – Rate Sheet ................................................................20
Attachment C – Trials & Depositions...................................................22
Attachment D – Photographs .............................................................24

# Openshaw v. Consolidated Engineering
# Steam Accident Analysis

## CED/AAI Case No. 6761.1

### Introduction

On April 26, 2007, CED/Accident Analysis, Inc. (CED/AAI) was asked to investigate an accident involving severe burn injuries resulting from steam emitted from a steam supply line under a walkway. Included as part of this report are the following attachments: Curriculum Vitae (Attachment A), Rate Sheet (Attachment B), and a list of Trials and Depositions (Attachment C).

### Background

On April 22, 2005, Miss Sophia Openshaw and Miss Regina Openshaw were walking on the sidewalk on 10th Street N.W. between Pennsylvania Avenue and Constitution Avenue in Washington, D.C. While passing over a grate in the sidewalk, both Sophia and Regina suffered burns.

### Summary

Based on the review of written materials, inspection and the analysis performed, CED/AAI is able to conclude the following to a reasonable degree of engineering certainty:

1. Based on contractual obligations, Consolidated Engineering Services, Inc. was responsible for the performance of the inspection and maintenance program on the system and was negligent in identifying the deficiency that caused this accident.

2. Consolidated Engineering Services was aware of the poor condition of the piping and the continuing problem with water being introduced into the manhole.

3. Steam pipes contained within an environment of water were subject to corrosion and accelerated degradation.

4. Since the outside of the steam pipe was surrounded by water which caused accelerated degradation, increased inspections should have been completed on the piping.

5. The steam system should have been designed, constructed and/or modified so a release of steam would not be directed through a grate on the sidewalk and onto unsuspecting pedestrians.

6. There were instances showing where Consolidated Engineering Services had not complied with the contract for the maintenance and repair of the Steam Distribution Complex.

## CED/AAI's Investigation

CED/AAI reviewed the following written material in support of the investigation:

Documents Reviewed

- Second Amended Complaint – David Openshaw and Lily Openshaw individually and as Guardians of Sophia Openshaw and Regina Openshaw, Minors, Plaintiffs, v. Consolidated Engineering Services, Inc., et al., Defendants, Civil Action No. 06-CV-1884 (CKK), dated April 24, 2007.

- Photographs taken of section of sidewalk with grate involved in the accident.

- Contract between the General Services Administration and Consolidated Engineering Services, Inc.

- ASME/ANSI B31.1, *Power Piping*, 2004 edition.

- Discovery.

CED/AAI also performed an inspection of the accident site on May 31, 2007. The inspection was documented with notes, measurements and photographs (Attachment D).

## Review of Written Materials

### Contract (Solicitation No. GS-11P-01-YMC-0085, dated 5/25/2001)

- "The Steam Distribution Complex consists of all steam supply piping, condensate return piping, and related mechanical, electrical, and structural equipment located outside of the two steam generating plants operated by the Government. This includes all tunnels, vaults, manholes, sumps, and building steam stations associated with the distribution system. (Refer to Section J, Exhibit 1.) The steam distribution tunnels and manholes are typically hot, damp, and dark. The tunnels and manholes are considered to be permit-required confined spaces" (Part I, Section C; General - page 14).
- "The Steam Distribution Complex is divided into 229 "assemblies" (tunnel sections, manholes, building steam stations, etc.) in 12 geographic zones. All of the assemblies in each zone shall have all preventative maintenance performed, in the month corresponding to the zone number (ie: Zone 1 work shall be performed in January, Zone 2 in February, etc...). In addition, all portions of the Steam Distribution Complex, with the exception of the building steam stations, shall be toured and inspected in accordance with the following schedule: tunnels – weekly; all manholes – monthly" (Part I, Section C; Specific Tasks, Section 1.A - page 15).
- "The Contractor shall perform all preventative maintenance on all equipment in accordance with Government checklists" (Part I, Section C; Specific Tasks, Section 1.B - page 15).
- "The Contractor shall tour and inspect all portions of the Steam Distribution Complex, whether or not they are specifically included above, with the exception of the building steam stations. Any deficiencies shall be noted and scheduled for repair or replacement" (Part I, Section C; Specific Tasks, Section 1.C - page 16).
- "Prioritization categories, guidelines, and timeframes shall be as follows: (1) Urgent Priority: Items that either prevent HOTD from delivering steam to its customers or that present a hazard or danger to HOTD [Heating Operation and Transmission District] personnel,

the Contractor's personnel, or the public" (Part I, Section C; Specific Tasks, Section 2.D - page 18).

- "The Contractor shall protect Government personnel and the public from any hazards that may result from its work, including excavations, open tunnel accesses and manholes, noxious fumes, open flames, noise, and steam and condensate discharges" (Part I, Section C; Conditions of Performance, Section 3 - page 21).

- Publications that were mandatory for job accomplishment by the Contractor included ASME *Boiler & Pressure Vessel Codes*, 1998 and ASME/ANSI B31.1, *Power Piping*, current edition.

- "The Steam Distribution Complex consists of approximately 7 miles of tunnels and 5 miles of direct-buried pipelines, supplying 250-psi saturated (406 degrees F) steam to approximately 100 government buildings and monuments in downtown Washington, DC. The majority of the tunnels are 7 feet high by 7 feet wide with two 18-inch or 20-inch steam lines, one 8-inch or 10-inch low-pressure pumped condensate line, and a 3-inch high-pressure condensate (trap return) line. The lines are mostly carbon steel Schedule 40 and 80 piping, with some of the condensate line consisting of fiberglass-reinforced plastic piping" (Exhibit 1, page 77).

- "There are nearly 70 manholes throughout the system, as well as over 40 material access holes and over 60 tunnel access holes" (Exhibit 1, page 77).

- "Most of the direct buried lines are in poor condition from the hostile underground environment and lack of cathodic protection. Older condensate and trap lines are frequently in need of repair, whereas steam line leaks occur frequently. Areas and buildings from which condensate can not be returned include 6th Street SW (one large museum), 10th Street (one large and two small buildings), Pennsylvania Avenue from 6th to 3rd Street NW (two large and one small buildings), and buildings on the 17th Street line (replacement in progress). System areas with likely greatest energy losses are Pennsylvania Avenue from 6rh to 3rd Street NW and 10th Street from Constitution Avenue to Pennsylvania Avenue, both direct buried lines" (Exhibit 1, page 77).

- "Planned, or in-progress, projects for the next two years include:
  o The replacement of up to 900 feet of buried steam and condensate lines underneath 10th Street" (Exhibit 1, pages 77-78).

- "All new structural steel shall be ASTM A36 galvanized tub steel. All other steel shall be ASTM A500 galvanized steel. All welds shall be made with E70xx electrodes. All non-galvanized and non-stainless steel, as well as all steel in areas that have been welded, shall be

galvanized in accordance with ASTM A123. All fastener hardware shall be Type 316 stainless steel. Expansion anchors for attaching brackets and stanchions to the tunnel ceiling, walls, or floor shall be Hilti Kwik Bolt II or Powers Rawl Power-Stud heavy duty, stud or threaded version, Type 316 stainless steel expansion anchors. All expansion anchors shall be installed with Type 316 stainless steel nuts, washers, and lock washers" (Exhibit 6, Section 14, page 99).

- "All welders shall be AWS certified to work on structural supports. The contractor shall have a Repair (R) or Power Piping (PP) Stamp from the American Society of Mechanical Engineers (ASME) and/or the National Board, or shall hire a subcontractor who has an R or PP stamp, to perform any pipe welding in the steam distribution system. The contractor shall have quality control procedures in place which address Welding Procedure Specifications (WPS) and Procedure Qualification Records (PQR) for each type of repair" (Exhibit 6, Section 14, page 99).

## ASME/ANSI B31.1, *Power Piping*, 2004 edition

- "This Code covers boiler external piping as defined below for power boilers and high temperature, high pressure water boilers in which: steam or vapor is generated at a pressure of more than 15 psig [100 kPa (gage)]; and high temperature water is generated at pressures exceeding 160 psig [1103 kPa (gage)] and/or temperatures exceeding 250°F (120°C)" (Section 100.1.2).
- "External and internal corrosion should be prevented or controlled consistent with design requirements and the environment in which the system is located" (Section IV-1.1).
- "A means for control of external corrosion of buried or submerged pipe and components may be accomplished through application of an effective protective coating or wrapping. This method of corrosion control can be supplemented with cathodic protection such as sacrificial anodes, rectifier-ground bed units, and suitable drainage bonds in stray current areas" (Section IV-2.1.2).
- "Unless it can be demonstrated by investigation, tests, or experience that cathodic protection is not needed, a cathodic protection system should be installed for all new buried carbon steel, alloy, ductile iron, cast iron, aluminum or other metallic piping" (Section IV-2.3.1).
- "Piping which is exposed to the atmosphere should be protected against external corrosion by use of corrosion resistant materials or by application of protective coatings or paints" (Section IV-4.1).

- "Erosion/corrosion (E/C) is a flow accelerated corrosion process which leads to loss of wall thickness in carbon or low alloy steel pipe exposed to water or wet steam. The parameters that affect the rate of metal loss include water or steam temperature, pH, oxygen content of the fluid, steam quality, flow velocity and piping layout, and the piping chromium, copper, and molybdenum content" (Section IV-5.1).

- "The Operating Company shall be responsible for investigating all material failures in critical piping systems. The cause for the failure shall be established. A report of the results of this investigation shall be included in the material history file and shall, as a minimum, contain the following information:
    - (A)  summary of design requirements
    - (B)  record of operating and test experience of failed components
    - (C)  any previous history of the component
    - (D)  any special conditions (corrosion, extraordinary loads, thermal excursions, etc.) which may have contributed to failure
    - (E)  conclusions as to cause
    - (F)  recommendations for corrective actions to minimize recurrence
    - (G)  corrective actions that were taken, including verification of satisfactory implementation
    - (H)  corrective action details and recommendations, if any, for similar action in other piping systems" (Section V-5.2.1).

- "This section pertains to the requirements for inspection or critical piping systems that may be subject to internal or external corrosion-erosion, such as buried pipe, piping in a corrosive atmosphere, or piping having corrosive or erosive contents. Requirements for inspection of piping system in order to detect wall thinning of piping and piping components due to erosion/corrosion, or flow-assisted corrosion, is also included" (Section V-7.1.1).

- "Where corrosion is cited in this section, it is to be construed to include any mechanism of corrosion and/or erosion. Recommended methods for monitoring and detection, acceptance standards, and repair/replacement procedures for piping components subjected to various erosion/corrosion mechanisms, including flow-assisted corrosion, are provided in nonmandatory Appendix IV" (Section V-7.1.2).

- "Procedures for corrosion shall include, but nor be limited to the following:
    - (I)  maintenance painting to resist external ambient conditions

*(J)* coating and/or wrapping for external protection of buried or submerged systems

*(K)* lining to resist internal corrosion from system fluid when applicable

*(L)* determining the amount of corrosion or erosion of the piping system internals caused by the flowing fluid

*(M)* determining the amount of external corrosion caused by ambient conditions, such as atmosphere, buried in soil, installed in tunnels or covered trenches, and submerged underwater

*(N)* preparing records which shall include all known leakage information, type of repair made, location of cathodically protected pipe, and the locations of cathodic protection facilities including anodes

*(O)* examining records from previous inspection and performing additional inspections where needed for historical records" (Section V-7.2.3).

## Other Discovery Material

### Initial Disclosures from Consolidated Engineering Services, Inc.

- "If we just replace the joints i (sic) feel we are just bandaging a bigger problem (condensate return) that until it is addressed the joint may be subject to failing again at worst case. If the condensate is not returned to the plant we will continue to have to pump the MH's and there will continue to be fog bank on the street" (E-mail from Mr. Richard Matkins to Mr. Greg Westphal, dated 05/16/2005).

- "The joints have failed because they are 40+ years old and were not maintained properly over the years (except for the past few years, but they were beyond hope at that point). The guides should still be in place and functioning, but worth checking out. Yes, I'd like the "T" replaced with the condensate dumping into the manhole as the return lines (both pumped condensate and high-pressure trap) to Constitution Avenue are assumed to have be (sic) worthless due to deterioration. All of the lines are scheduled to be replaced under a large design/build contract going out for bids in FY06, so no other work will be necessary. I'd rather pump the manhole out every day (or as often as necessary) to eliminate the steam plume (and keep the condensate off the steam line)" (E-mail from Mr. Greg Westphal to Mr. Richard Matkins, dated 05/16/2005).

- "We would like for CES to replace the expansion joints 2J125 and 2J125 in Manhole 41 on 10th Street....Due to the severity of the leaks from these joints, we would like them ordered and shipped as soon as possible so we can have a steam outage for their installation" (E-mail from Mr. Greg Westphal to Mr. Richard Matkins, dated 05/13/2005).
- "On July 17, 2005 a site visit was conducted by GSA personnel at Manhole 41. As a result of this inspection, I certify that on July 17, 2005, Consolidated Engineering Services furnished the equipment and services called for by GSA Contract Number GS-11P-01-YMC0085 and GSA work order number Y05000671, in accordance with all applicable requirements. I further certify that the supplies and services are of the quality specified and conform with contract requirements, including specifications, drawings, and GSA work orders" (Letter from Mr. Greg A. Wesphal to Mr. Richard C. Matkins, dated August 20, 2005).

Work Orders for Manhole 41

- Government Work Orders (WO) to dewater Manhole 41:
  o 07/23/02 – Y02002996
  o 07/26/02 – Y02002024
  o 08/29/02 – Y02002354
  o 10/17/02 – Y02002592
  o 11/21/02 – Y02002817
  o 03/18/03 – Y03000666
  o 04/01/03 – Y03000692
  o 05/05/03 – Y03001004
  o 05/19/03 – Y03001124
  o 07/11/03 – Y03001238
  o 09/22/03 – Y03001560
  o 12/11/03 – Y03002054
  o 01/16/04 – Y04000154
  o 02/04/04 – Y04000229
  o 03/31/04 – Y04000981
  o 08/16/04 – Y04001478
  o 09/16/04 – CES handwritten work order
  o 09/30/04 – CES handwritten work order
  o 10/29/04 – Y04001644
  o 12/13/04 – CES handwritten work order
  o 01/31/05 – CES handwritten work order
  o 03/08/05 – CES handwritten work order
  o 02/10/05 – Y05000215
  o 03/16/05 – CES handwritten work order

- o 03/24/05 – CES handwritten work order
- o 03/28/05 – CES handwritten work order
- WO# Y05000319, dated 02/19/05, Priority 3 – "Assist GSA investigating leaks in Manholes in Zone 2.", completed 04/22/05.
- WO# Y02002024, dated 07/09/02, Priority 3 – "Flooded, too hot, needs cleaning; PUMP OUT BI WEEKLY".
- WO# Y05000671, dated 08/06/02, Priority 3 – "Flooded, joint leaking."
- WO# Y05000535, dated 04/27/05, Priority 1 – "Pick up steam chimney from Central plant alley and install over manhole vent grating that is blowing steam in the sidewalk.  Block the second manhole grating with sandbags.".
- WO# Y05000537, dated 04/27/05, Priority 1 – "Meet somebody from SDC at Manhole 41 for leak inspection on Thursday (4/28/05) morning.  Manhole will need to be pumped out."
- WO# 07-1077, dated 01/06/03, Priority 3 – "Water leak coming through N wall 2J125."
- WO# Y05000236, dated 02/09/05, Priority 3 – Preventative Maintenance "TOO HOT PMED 5/7/05."
- WO# Y05000402, dated 02/26/05, Priority 5 – "Pump and check for leaks in the manholes on 10th St. This will be done after normal work hours because the line has to be shut down."

Columbia Engineering, Inc. drawing for steam pipe anchor – MH 41

- "12"x12'x½" thick plate w/ 4-½" φ Hilti Carbon Steel Kwik Bolt II expansion anchors w/ 4" min. embedment, installed per manufactured recommendations".

American Combustion Industries, Inc. – Job Ticket 125853, dated 5/7/05

- "Found broken grease fitting steam has eaten hole through expansion joint at leak.  Drag leads weld up hole in expansion joint. Cleanup".

## Inspection

On May 10, 2007, CED/AAI performed an inspection of the steam vault under Manhole 41 on 10th Street N.W. between Constitution Avenue and Pennsylvania Avenue in Washington, D.C. The inspection was documented with notes and photographs (Attachment D).

Manhole 41 was located on the east side of 10th Street between Constitution Avenue and Pennsylvania Avenue (Photographs 6 and 15). The vent for the vault was on the sidewalk on the east side of 10th Street (Photographs 1 through 3). The grating for the vent measured approximately 27½ inches by 15½ inches and displayed signs of the chimney being in place for an extended period of time (Photographs 4 & 5). The grating was located 12 inches from the curb to the street and 5 inches from the mulch bed for the tree to the east. There were chimneys over both Manhole 41 and the vent grate (Photographs 9 & 10) with evidence of steam vapors emanating from both chimneys (Photographs 11 through 14). The vault was dewatered and conditioned air was introduced into the vault prior to entry.

The ladder in the manhole was in the northeast corner of the vault. There was a sump pit in the southeast corner of the vault. The vault was approximately 11 feet wide (east to west) and 14 feet long (north to south). The ceiling was approximately 6 feet 6 inches high. On the south side of the ladder at a height of approximately 6 feet was a 6 inch diameter vent pipe that led to the grate on the sidewalk. On the far west side of the vault was a 6 inch condensate return line that had been abandoned in place. This return line had a section of the pipe missing (Photograph 18 – pipe in background). There was also a 12 inch steam supply line approximately 3 feet 6 inches to the east of the west wall that ran north and south. The centerline of the steam supply line was approximately 4 feet 6 inches above the floor of the vault. There were two concrete pipe supports that were no longer in use (Photograph 23). There were three steel pipe supports that were anchored in the ceiling of the vault (Photographs 16, 23, and 24). There was also a steel pipe

support on the north wall (Photographs 17 &18).    There were also two expansion joints on the pipe (Photographs 20, 23 & 24).  Based on a review of the Consolidated Engineering disclosures, the expansion joints had been replaced sometime between May and July of 2005.    There appeared to be the remains of pipe guide on the north end of the pipe that was askew on the pipe (Photograph 16).

There was evidence of water leaking into the vault through the pipe chase on the north wall (Photograph 17).  There was also evidence that the vault had been flooded numerous times.  There was significant mud on the wall pipe support and the north wall itself (Photographs 16 through 18).  There were several water lines on the steam supply line (Photographs 19 through 22) which would indicate that the water level reached at least 4 feet 6 inches.  There appeared to be a shroud or the remains of a support on the north end of the pipe that had been corroded away in the area below the water lines (Photograph 16).  There were active leaks coming from the north expansion joint (Photographs 18, 21 and 22).

**Discussion**

"The Contractor shall perform all preventative maintenance on all equipment in accordance with Government checklists" (Part I, Section C; Specific Tasks, Section 1.B - page 15).  "The Contractor shall tour and inspect all portions of the Steam Distribution Complex, whether or not they are specifically included above, with the exception of the building steam stations.  Any deficiencies shall be noted and scheduled fro repair or replacement" (Part I, Section C; Specific Tasks, Section 1.C - page 16).  "The Contractor shall protect Government personnel and the public from any hazards that may result from its work, including excavations, open tunnel accesses and manholes, noxious fumes, open flames, noise, and

steam and condensate discharges" (Part I, Section C; Conditions of Performance, Section 3 - page 21). All of the assemblies in each zone shall have all preventative maintenance performed, in the month corresponding to the zone number (ie: Zone 1 work shall be performed in January, Zone 2 in February, etc...). In addition, all portions of the Steam Distribution Complex, with the exception of the building steam stations, shall be toured and inspected in accordance with the following schedule: tunnels – weekly; all manholes – monthly" (Part I, Section C; Specific Tasks, Section 1.A - page 15). The vault under Manhole 41 was scheduled to have preventive maintenance completed in February of 2005 since it was in Zone 2. Work Order Y05000236, dated 02/09/05, was the work order for the scheduled preventative maintenance. This maintenance was not performed at that time since the vault was "TOO HOT". The preventative maintenance was eventually performed on 5/7/05, after the accident. Based on contractual obligations, Consolidated Engineering Services, Inc. was responsible for the performance of the inspection and maintenance program on the system and was negligent in identifying the deficiency that caused this accident.

"Most of the direct buried lines are in poor condition from the hostile underground environment and lack of cathodic protection. Older condensate and trap lines are frequently in need of repair, whereas steam line leaks occur frequently. Areas and buildings from which condensate can not be returned include 6th Street SW (one large museum), 10th Street (one large and two small buildings), Pennsylvania Avenue from 6th to 3rd Street NW (two large and one small buildings), and buildings on the 17th Street line (replacement in progress). System areas with likely greatest energy losses are Pennsylvania Avenue from 6th to 3rd Street NW and 10th Street from Constitution Avenue to Pennsylvania

Avenue, both direct buried lines" (Exhibit 1, page 77). "The joints have failed because they are 40+ years old and were not maintained properly over the years (except for the past few years, but they were beyond hope at that point). The guides should still be in place and functioning, but worth checking out. Yes, I'd like the "T" replaced with the condensate dumping into the manhole as the return lines (both pumped condensate and high-pressure trap) to Constitution Avenue are assumed to have be worthless due to deterioration. All of the lines are scheduled to be replaced under a large design/build contract going out for bids in FY06, so no other work will be necessary. I'd rather pump the manhole out every day (or as often as necessary) to eliminate the steam plume (and keep the condensate off the steam line)" (E-mail from Mr. Greg Westphal to Mr. Richard Matkins, dated 05/16/2005). Between July 2002 and April 22, 2005, the date of the accident, there were 26 work orders for pumping out Manhole 41. There were also the following work orders that addressed the possibility of leaks and the poor condition of the vault under Manhole 41: WO# Y02002024, dated 07/09/02 – "Flooded, too hot, needs cleaning; PUMP OUT BI WEEKLY"; WO# Y05000671, dated 08/06/02 – "Flooded, joint leaking"; WO# 07-1077, dated 01/06/03, Priority 3 – "Water leak coming through N wall 2J125"; WO# Y05000319, dated 02/19/05 – "Assist GSA investigating leaks in Manholes in Zone 2"; WO# Y05000402, dated 02/26/05 – "Pump and check for leaks in the manholes on 10th St. This will be done after normal work hours because the line has to be shut down". Consolidated Engineering Services was aware of the poor condition of the piping and the continuing problem with water being introduced into the manhole.

Steam pipes contained within an environment of water were subject to corrosion and accelerated degradation.

Since the outside of the steam pipe was surrounded by water which caused accelerated degradation, increased inspections should have been completed on the piping.

The steam system should have been designed, constructed and/or modified so a release of steam would not be directed through a grate on the sidewalk and onto unsuspecting pedestrians.

"All new structural steel shall be ASTM A36 galvanized tub steel. All other steel shall be ASTM A500 galvanized steel. All welds shall be made with E70xx electrodes. All non-galvanized and non-stainless steel, as well as all steel in areas that have been welded, shall be galvanized in accordance with ASTM A123. All fastener hardware shall be Type 316 stainless steel. Expansion anchors for attaching brackets and stanchions to the tunnel ceiling, walls, or floor shall be Hilti Kwik Bolt II or Powers Rawl Power-Stud heavy duty, stud or threaded version, Type 316 stainless steel expansion anchors. All expansion anchors shall be installed with Type 316 stainless steel nuts, washers, and lock washers" (Exhibit 6, Section 14, page 99). Columbia Engineering, Inc. drawing for steam pipe anchors in Manhole 41 required "12"x12'x½" thick plate w/ 4-½" $\phi$ Hilti Carbon Steel Kwik Bolt II expansion anchors w/ 4" min. embedment, installed per manufactured recommendations". The use of Carbon Steel anchors was in direct conflict with the contract requirement for the use of stainless steel anchors. The preventive maintenance required for Manhole 41 during the month of February in 2005 was not completed until May 7, 2005, 15 days after the accident. This work was not completed because the vault was "TOO HOT". The General Services Administration did not adequately fulfill their responsibilities to manage the contract for the inspection and

maintenance of the Steam Distribution Complex (SDC).  However, this did not relieve Consolidated Engineering from their responsibility to perform the work on the SDC in a manner that took into account public safety. There were instances showing where Consolidated Engineering Services had not complied with the contract for the maintenance and repair of the Steam Distribution Complex.

## Conclusions

Based on the review of written materials, inspection and the analysis performed, CED/AAI is able to conclude the following to a reasonable degree of engineering certainty:

1. Based on contractual obligations, Consolidated Engineering Services, Inc. was responsible for the performance of the inspection and maintenance program on the system and was negligent in identifying the deficiency that caused this accident.

2. Consolidated Engineering Services was aware of the poor condition of the piping and the continuing problem with water being introduced into the manhole.

3. Steam pipes contained within an environment of water were subject to corrosion and accelerated degradation.

4. Since the outside of the steam pipe was surrounded by water which caused accelerated degradation, increased inspections should have been completed on the piping.

5. The steam system should have been designed, constructed and/or modified so a release of steam would not be directed through a grate on the sidewalk and onto unsuspecting pedestrians.

6. There were instances showing where Consolidated Engineering Services had not complied with the contract for the maintenance and repair of the Steam Distribution Complex.

CED/AAI reserves the right to supplement this report if new information becomes available. If there are any questions about the content of this report, please contact our offices.

Submitted by:                                    Reviewed by:

Larry D. Smith                                   William H. Daley, II, P.E.
Mechanical Engineer                              Mechanical Engineer

# CED/AAI Curriculum Vitae
## Attachment A

## Openshaw v. Consolidated Engineering
## Steam Accident Analysis

**Curriculum Vitae**

of

**Larry D. Smith, C.F.E.I.**
**Mechanical Engineer**

**CED/AAI Case No. 6761.1**

# CHESAPEAKE ENGINEERING & DESIGN, INC.
# ANNAPOLIS, MD

# CURRICULUM VITAE
## LARRY D. SMITH, M.S.E.M., C.F.E.I.
### Mechanical Engineer & Fire Origin and Cause

## Academic Background

M.S., Engineering Management, The George Washington University, 1992
B.S., Mechanical Engineering, United States Naval Academy, 1983
National Fire, Arson and Explosion Investigation Training Program (2004)

## Registration and Qualifications

Certified Lead Auditor in accordance with ANSI N45.23
Fleet Officer of the Deck - Submarines

## Professional Work History

Mechanical Engineer, CED/Accident Analysis Inc., 2004-Present
Associate Professor, College of Southern Maryland, Math Department, 2002-Present
Technical Consultant, Constellation Nuclear Services, 2000-2004
Mechanical Engineer, Constellation Energy Group, 1998-2000
Mechanical Engineer, TRW, 1997-1998
Nuclear Engineer, Baltimore Gas & Electric, 1995-1997
Mechanical Engineer, Baltimore Gas & Electric, 1989-1995
Plant Engineer, Carr-Lowrey Glass Company, 1989
Mechanical Engineer, Tracor Applied Sciences, 1988-1989
Engineering/Weapons Division Officer, USS DANIEL WEBSTER (SSBN 626(B)), 1983-1988

## Professional Societies

American Society of Mechanical Engineers (ASME)
National Association of Fire Investigators
MENSA

## Publications

ASME Code Appendix – "Operating Nuclear Power Plant Fatigue Assessments", August 1994

## Areas of Expertise

| | |
|---|---|
| Mechanical Engineering | Mechanical Equipment Evaluations |
| Analysis and Testing | Machine Analysis and Guarding |
| Marine Engineering | Rules of the Nautical Road |
| Human Factors | Fire Origin & Cause |

## Continuing Education Seminars
OSHA Confined Space Safety, Certificate No. 57770 (2007)

# CED/AAI Rate Sheet
## Attachment B

## Openshaw v. Consolidated Engineering
## Steam Accident Analysis

**Rate Sheet**

**of**

**Larry D. Smith, C.F.E.I.**
**Mechanical Engineer**

CED/AAI Case No. 6761.1

# CHESAPEAKE ENGINEERING & DESIGN, INC.
# ANNAPOLIS, MD

**Fee Schedule**
**Effective January 2007**

*Larry D. Smith, M.S.E.M., C.F.E.I.*            *$245.00 per hour*

Time:
Engineers' Time:                                      $165.00 - $325.00 per hour
Research Associate and Technicians' Time:             $ 65.00 - $140.00 per hour
Graphic Designers' Time:                              $ 85.00 per hour

Engineering time is billed at the same rate for all services including; research, review, analysis, testing, inspections, depositions, trial, testimony and travel. There are no charges or administrative fees for opening or maintaining case files.

Expenses:
Normal expenses and costs will be charged to the case. These include:

Mileage:                          $0.61 per mile
Film & development:               $37.50 per roll
Photo CD-ROM:                     $42.50 per CD-ROM
Video recording:                  $40.00 per tape
Large media print:                $70.00 per print
Laboratory usage fee:             to be specified
Equipment storage fee:            to be specified
Special equipment for testing:    at cost
Testing materials:                at cost
Travel tickets:                   to be specified
Hotel, meals, etc.:               to be specified

Materials and/or other specified expenditures that are required to the case will be charged at cost. Items purchased that are retained by CED/AAI and usable in other cases will not be charged. Travel costs that are incurred for this case will carry a 10% additional fee to cover administrative costs and financial obligations from the time of purchase to the time of payment from the client. Excluded from this charge are charges for mileage, tolls, parking, taxi fare and meals.

Activities are billed monthly or at the completion of a work phase. All balances are due upon receipt of invoice. Rates are subject to change without notice. Unpaid bills are charged a service fee of 1 ½ % per month for unpaid balances.

CED/AAI reserves the right to require a $5,000.00 retainer. This retainer is a forward payment of future services for which the client has contracted, retained and agreed upon the engineer's billable rates and expenses.

If there is a question about any item on our fee schedule, please call to discuss your concern. Our ultimate goal is to provide you with the highest level of service possible.

# CED/AAI List of Trials & Depositions
## Attachment C

## Openshaw v. Consolidated Engineering
## Steam Accident Analysis

**Trials and Depositions**

**of**

**Larry D. Smith, C.F.E.I.**
**Mechanical Engineer**

**CED/AAI Case No. 6761.1**

## CHESAPEAKE ENGINEERING & DESIGN, INC.
## ANNAPOLIS, MD

Trials and Depositions for Larry D. Smith, C.F.E.I.

June 12, 2007

| Date | Depositions/Trials | Title | Location | Docket No. |
|---|---|---|---|---|
| 11/30/04 | Deposition - CED/AAI Case No.:5731.9 | Minnie Koch, Plaintiff v. Holiday Productions, Inc. Defendant | In te Circuit Court of Maryland for Montgomery County | Civil Action 250240-V |
| 06/08/06 | Deposition - CED/AAI Case No.:5695.9 | Vicki M. Miller, Plaintiff v. Seewald Woodworks, Inc., Wyoming Millworks Co., MW Manufacturers, Inc., Defendants | In the Superior Court of the State of Delaware in and for Kent County | Civil Action 04C-02-026 JTV |
| 12/11/06 | Deposition - CED/AAI Case No. 6199.1 | Farm Family Casualty Insurance Co., a/s/o Ann Isaacs, and Ann Isaacs, Plaintiffs v. Harman Stove Co., Inc., and Walls Farm & Garden Center, Inc. | In the Superior Court of the State of Delaware in and for New Castle County | Civil Action 05C-01-012 ESB |
| 04/24/07 | Deposition - CED/AAI Case No. 6666.9 | Natalie Heish, et al., Plaintiff v. Consolidated Engineering Service, et al., Defendants | United States District Court for the District of Columbia | Civil Action 06-1218 (CKK) |
| 05/17/07 | Deposition - CED/AAI Case No. 5860.1 | David D. Millard, Sr., Administrator for the Estate of Colma Lynn Millard, Deceased, Plaintiff v. Bayview Villas Condominium Association and Landmark Property Services, LLC, Defendants | In the Circuit Court of the City of Norfolk | At Law No: CL06-3804 |
| 05/23/07 | Trial - CED/AAI Case No. 6634.1 | Maria Morrison t/d/b/a Calabrio's Pizzeria and ENJ Enterprises, Inc., Plaintiffs v. Hoodco, Inc., Defendant | In the Court of Common Pleas of Montgomery County | CCP No. 99-21533 |

CHESAPEAKE ENGINEERING & DESIGN, INC.

# CED/AAI Photographs
## Attachment D

## Openshaw v. Consolidated Engineering
## Steam Accident Analysis

Photographs taken 05/31/07

by

Larry D. Smith, C.F.E.I.
Mechanical Engineer

CED/AAI Case No. 6761.1

# CHESAPEAKE ENGINEERING & DESIGN, INC.
# ANNAPOLIS, MD

# CED/AAI Case No.: 6761.1
## Openshaw v. Consolidated Engineering Steam Accident Analysis
## May 31, 2007

## PHOTO INDEX

Photograph 1.    Steam vent for Manhole 41 on sidewalk facing west
Photograph 2.    Steam vent for Manhole 41 on sidewalk facing south
Photograph 3.    Steam vent for Manhole 41 on sidewalk facing south
Photograph 4.    Close up of steam vent for Manhole 41
Photograph 5.    Close up of steam vent for Manhole 41
Photograph 6.    Chimneys over vent and Manhole 41 with air conditioning truck
Photograph 7.    Ventilating trunk in steam vault
Photograph 8.    Vapors emanating from chimney over vent for Manhole 41
Photograph 9.    Vapors emanating from chimney over vent and vault for Manhole 41
Photograph 10.   Vapors emanating from chimney over vent and vault for Manhole 41
Photograph 11.   Vapors emanating from chimney over vent for Manhole 41
Photograph 12.   Vapors emanating from chimney over vent for Manhole 41
Photograph 13.   Vapors emanating from chimney over vent for Manhole 41
Photograph 14.   Vapors emanating from chimney over vent for Manhole 41
Photograph 15.   Cover for Manhole 41
Photograph 16.   Steam piping at north end of vault for Manhole 41
Photograph 17.   Steam piping and support at north end of vault for Manhole 41
Photograph 18.   Steam piping and support at north end of vault for Manhole 41
Photograph 19.   Steam piping, support and expansion joint in vault for Manhole 41
Photograph 20.   Steam piping and expansion joint in vault for Manhole 41
Photograph 21.   Steam piping and expansion joint in vault for Manhole 41
Photograph 22.   Steam piping and expansion joint in vault for Manhole 41
Photograph 23.   Steam piping, expansion joints and supports at south end of vault for Manhole 41
Photograph 24.   Steam piping, expansion joints and supports at south end of vault for Manhole 41



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090                    www.ced-aai.com

# PHOTOGRAPH 1.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
**05/31/07**



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090                    www.ced-aai.com

# PHOTOGRAPH 2.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
**05/31/07**



**CED** Accident Analysis Inc.
800-466-1090                    www.ced-aai.com
## PHOTOGRAPH 3.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident    PHOTOS TAKEN **05/31/07**



**CED** Accident Analysis Inc.
800-466-1090                    www.ced-aai.com
## PHOTOGRAPH 4.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident    PHOTOS TAKEN **05/31/07**



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090        www.ced-aai.com

# PHOTOGRAPH 5.

PHOTOS TAKEN

LDS / CASE 6764.1-Openshaw v. CES Steam Accident        **05/31/07**



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090        www.ced-aai.com

# PHOTOGRAPH 6.

PHOTOS TAKEN

LDS / CASE 6764.1-Openshaw v. CES Steam Accident        **05/31/07**



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN/ACCIDENT ANALYSIS

800-466-1090          www.ced-aai.com

## PHOTOGRAPH 7.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
05/31/07



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN/ACCIDENT ANALYSIS

800-466-1090          www.ced-aai.com

## PHOTOGRAPH 8.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
05/31/07



**CED** Accident Analysis Inc.
800-466-1090          www.ced-aai.com

# PHOTOGRAPH 9.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
05/31/07



**CED** Accident Analysis Inc.
800-466-1090          www.ced-aai.com

# PHOTOGRAPH 10.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
05/31/07



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090          www.ced-aai.com

# PHOTOGRAPH 11.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
**05/31/07**



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090          www.ced-aai.com

# PHOTOGRAPH 12.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
**05/31/07**



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN · ACCIDENT ANALYSIS
800-466-1090          www.ced-aai.com

## PHOTOGRAPH 13.

PHOTOS TAKEN
LDS / CASE 6764.1-Openshaw v. CES Steam Accident    05/31/07



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN · ACCIDENT ANALYSIS
800-466-1090          www.ced-aai.com

## PHOTOGRAPH 14.

PHOTOS TAKEN
LDS / CASE 6764.1-Openshaw v. CES Steam Accident    05/31/07



**CED** Accident Analysis Inc.

800-466-1090                 www.ced-aai.com

# PHOTOGRAPH 15.

**LDS / CASE 6764.1-Openshaw v. CES Steam Accident**

PHOTOS TAKEN
**05/31/07**



**CED** Accident Analysis Inc.

800-466-1090                 www.ced-aai.com

# PHOTOGRAPH 16.

**LDS / CASE 6764.1-Openshaw v. CES Steam Accident**

PHOTOS TAKEN
**05/31/07**



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090          www.ced-aai.com

# PHOTOGRAPH 17.

PHOTOS TAKEN
**05/31/07**

LDS / CASE 6764.1-Openshaw v. CES Steam Accident



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090          www.ced-aai.com

# PHOTOGRAPH 18.

PHOTOS TAKEN
**05/31/07**

LDS / CASE 6764.1-Openshaw v. CES Steam Accident



CED Accident Analysis Inc.
CHESAPEAKE ENGINEERING...
800-466-1090          www.ced-aai.com

## PHOTOGRAPH 19.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
05/31/07



CED Accident Analysis Inc.
CHESAPEAKE EQUIP...
800-466-1090          www.ced-aai.com

## PHOTOGRAPH 20.

LDS / CASE 6764.1-Openshaw v. CES Steam Accident

PHOTOS TAKEN
05/31/07



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS

800-466-1090          www.ced-aai.com

# PHOTOGRAPH 21.

PHOTOS TAKEN
05/31/07

LDS / CASE 6764.1-Openshaw v. CES Steam Accident



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS

800-466-1090          www.ced-aai.com

# PHOTOGRAPH 22.

PHOTOS TAKEN
05/31/07

LDS / CASE 6764.1-Openshaw v. CES Steam Accident



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090          www.ced-aai.com
# PHOTOGRAPH 23.

PHOTOS TAKEN
LDS / CASE 6764.1-Openshaw v. CES Steam Accident    05/31/07



**CED** Accident Analysis Inc.
CHESAPEAKE ENGINEERING & DESIGN / ACCIDENT ANALYSIS
800-466-1090          www.ced-aai.com
# PHOTOGRAPH 24.

PHOTOS TAKEN
LDS / CASE 6764.1-Openshaw v. CES Steam Accident    05/31/07

**B. Scott Teunis, M.D., F.A.C.S.**
**184 James Cove Landing**
**P.O. Box 1288**
**White Stone, Virginia 22578**

**EXPERT REPORT**

**June 6, 2007**

**Openshaw v. Consolidated Engineering Services, Inc., et al.**
**Case No. 1:06-cv-1884**

On April 22, 2005, Lily Openshaw was walking with her daughters Sophia and Regina on the sidewalk of 10th Street, N.W. between Pennsylvania Avenue, N.W. and Constitution Avenue, N.W. in the District of Columbia. At approximately 4:45 p.m., they were burned by scalding hot steam emanating from some type of underground structure. Both girls sustained burns, Sophia more severely than Regina, and were taken eventually to the Children's National Medical Center emergency room where Sophia was evaluated.

Sophia was diagnosed with first and second degree burns to the left foot and ankle. These were lightly debrided and dressed with Sivadene. She was discharged to follow up in the burn clinic. Sophia sought an evaluation on April 25, 2005 with Dr. Wagner where a dressing change was done. She was continued on Silvadene.

Sophia was checked on April 27, 2005 at Children's Hospital, at which time the wounds were futher debrided and dressed. She was splinted and given crutches to walk with.

A review of the medical records and bills from Children's National Medical Center and Annapolis Pediatrics reveals that all of the medical treatment and care which Sophia Openshaw received was reasonable and necessary and that the costs of such treatment were also reasonable and appropriate.

Sophia Openshaw suffered first and second degree burns to her left foot and ankle.

My post burn diagnosis is hyperpigmentation of left foot and ankle.

My recommendation is that no surgical treatment is indicated. Sophia will have discoloration in this area of a permanent and enduring nature, which will not appreciably change in the future. She will also have some degree of hypersensitivity to sun in this area, and the tendency of the differential in pigmentation to be exacerbated by any sun exposure.

My opinions are based on my experience as a board certified plastic surgeon, active in the clinical practice of plastic surgery, for over 32 years, and my review of relevant data and information provided to me by Plaintiffs' counsel.

In forming my opinions, I have considered the following data and information:

1. A settlement letter to Consolidated Engineering Services, Inc.

2. The Second Amended Complaint filed in this matter.

3. Records from D.C. Fire and Emergency Medical Services.

4. Bill from D.C. Fire and Emergency Medical Services.

5. Records from Children's National Medical Center.

6. Bill from Children's National Medical Center.

7. Records from Annapolis Pediatrics.

8. Bill from Annapolis Pediatrics.

9. Pictures of Sophia's ankle taken following the incident (attached hereto as Exhibit A).

10. Pictures of Sophia's ankle taken April 2007 (attached hereto as Exhibit B).

At this time, I do not posses nor have I created any exhibits to be used as a summary of or support for my opinions, other than the pictures attached hereto.

My qualifications to provide this opinion come from more than 32 years of active clinical practice in plastic surgery. I am a board certified plastic surgeon. I was an assistant professor at George Washington University School of Medicine and Georgetown University School of Medicine. I am a recipient of the Ernest A. Gould Award for excellence in surgery. I have performed literally thousands of scar revision procedures during the course of my career.

For additional information on my qualifications, please see the attached curriculum vitae, attached hereto as Exhibit C, as well as the other information included throughout this report.

For my report in this matter, I have charged Plaintiffs' counsel $500.00. For my testimony, or any additional work, in this matter, I will charge Plaintiffs' counsel in accordance with the following fee schedule:

**LEGAL FEE SCHEDULE**

## B. SCOTT TEUNIS, M.D., F.A.C.S.

| | | |
|---|---|---|
| 1. | Legal Report/Review of Records | $500-$550 |
| 2. | Pre-Trial Conference | $300 |
| 3. | Deposition (video/in office) | $1,500-$3,000 |
| 4. | Court Appearance (half day) | $3,500 |
| 5. | Court Appearance (full day) | $5,000+ |

The following is a listing of other cases in which I have testified as an expert at trial or by deposition within the preceding four years:

| | |
|---|---|
| June 21, 2006 | Kirkland (Roark) v. INOVA Health Care |
| April 10-11, 2006 | Starliper v. Lucero & J.R. Concrete, Inc. |
| March 2, 2006 | Faughnan v. Gomuwka, M.D. |
| February 21, 2006 | Sandra Sue v. United States of America |
| May 11, 2005 | Rahman v. Bitar, M.D. |
| January 26, 2005 | Neely v. Sullivan & French, M.D. |
| January 10, 2005 | Parks v. Cameron |
| June 9, 2004 | Christian v. Poindexter, M.D. |
| December 8-14, 2004 | Jung v. Suh, M.D. |
| December 16, 2003 | Kelly v. King, M.D. |
| October 6, 2003 | Vu v. Poindexter, M.D. |

Sincerely,

Bernard Scott Teunis, M.D., F.A.C.S.

**B. Scott Teunis, M.D., F.A.C.S.**
**184 James Cove Landing**
**P.O. Box 1288**
**White Stone, Virginia 22578**

**EXPERT REPORT – EXHIBIT A**

**June 6, 2007**

**Openshaw v. Consolidated Engineering Services, Inc., et al.**
**Case No. 1:06-cv-1884**





B. Scott Teunis, M.D., F.A.C.S.
184 James Cove Landing
P.O. Box 1288
White Stone, Virginia 22578


**EXPERT REPORT – EXHIBIT B**

**June 6, 2007**


**Openshaw v. Consolidated Engineering Services, Inc., et al.**
**Case No. 1:06-cv-1884**









B. Scott Teunis, M.D., F.A.C.S.
184 James Cove Landing
P.O. Box 1288
White Stone, Virginia 22578

# EXPERT REPORT – EXHIBIT C

June 6, 2007

**Openshaw v. Consolidated Engineering Services, Inc., et al.**
**Case No. 1:06-cv-1884**

# CURRICULUM VITAE

NAME:              Bernard Scott Teunis, M.D.

ADDRESS:           184 James Cove Landing
                   P.O. Box 1288
                   White Stone, Virginia  22578

PLACE OF BIRTH:    Washington, D.C.

DATE OF BIRTH:     September 17, 1936              CITIZENSHIP:      USA

| **Licensed to Practice Medicine** | Name of State or City | | Date License Issued | |
|---|---|---|---|---|
| | Washington, D.C. | | November 30, | 1970 |
| | Maryland | | August | 1972 |
| | Virginia | | July 2, | 1962 |
| | Minnesota | | April | 1970 |

| **Education** | College/University | Degree | Date of Graduation |
|---|---|---|---|
| **Premedical** | University of VA | B.A. | June 1958 |
| **Medical** | University of VA | M.D. | June 1962 |

| **Internships** | University of Virginia Hospital | July 1962 – June 1963 |
|---|---|---|

| **Residencies** | General Surgery Washington Hospital Center Washington, D.C. | July 1966 – June 1970 |
|---|---|---|
| | Plastic & Reconstructive Surgery Mayo Clinic Rochester, Minnesota | July 1970 – June 1972 |

| **Military** | Captain, U.S. Army Reserves Chief, Berlin Army Hospital Ear, Nose & Throat Department & Department of Ophthalmology | 1963 – 1966 |
|---|---|---|

| **Honors** | Ernest A. Gould Award for Excellence in Surgery Washington Hospital Center | 1969 |
|---|---|---|

| | | |
|---|---|---|
| **Certification By American Specialty Boards** | American Board of Surgery | April 22, 1971 |
| | American Board of Plastic & Reconstructive Surgery | June 23, 1973 |

| | | |
|---|---|---|
| **Medical Society Membership** | District of Columbia Medical Society | |
| | Fairfax County Medical Society | |
| | American Society of Plastic & Reconstructive Surgeons | |
| | American College of Surgeons | |
| | American Medical Association | |
| | Pan American Medical Association | |
| | Southeastern Society of Plastic & Reconstructive Surgeons | |
| | Montgomery County Medical Society | |
| | National Capital Society of Plastic & Reconstructive Surgeons | President/1987 |
| | American Society of Aesthetic Plastic Surgeons | |
| | The Lipoplasty Society | |

| | |
|---|---|
| **Academic Appointments** | George Washington University Associate Clinical Professor of Surgery/May 1974 |
| | Georgetown University Hospital Assistant Clinical Professor/1988 |

| | | |
|---|---|---|
| **Hospital Affiliations** | Plastic & Reconstructive Surgery Plastic Section Chief and Attending Surgeon | Fairfax Hospital |
| | Attending Surgeon | Sibley Memorial Hospital |
| | Attending Surgeon | Arlington Hospital |

| | | |
|---|---|---|
| **Contributions To Medical and Surgical Literature** | Acute Methemoglobinemia and Hemolytic Anemia Due to Toluidine Blue | Archives of Surgery/Oct 1970 |
| | Restoration of Hand Function | American AORN Journal/Jan 1975 |

| **Papers Presented** | Complications and Physiologic Considerations of Anal Disease (Co-Author J.J. Weinstein, M.D.) Presented to American Medical College of Gastroenterology – October 1967 |
|---|---|
| | Early Claw Deformity, Secondary to Entrapment in Elbow, Relieved by Decompression Symposium of Military Plastic Surgery – January 1973 |
| | Head and Neck Cancer Plastic & Reconstructive Residents' Meeting Toledo, Ohio – February 1972 |
| | Post-Irradiation Chest Wall Reconstruction Symposium of Military Plastic Surgery – January 1973 |
| | Treatment of Trigger Fingers and DeQuervain's Disease Georgetown Hand Symposium – April 1978/May 1979 |
| | Reconstructive Surgery of the Breast American Bicentennial Medical – Dental Society Vail, Colorado – 19681 |
| | Aesthetic Surgery of the Aging Face American Bicentennial Medical – Dental Society Vail, Colorado – 1982 |
| | Coping with Major Wounds American Bicentennial Medical – Dental Society Vail, Colorado – 1984 |
| | Ambulatory Outpatient Suction Lipectomy Combined Maryland National Capital Society Meeting – 1987 |
| | Liposculpturing Virginia Association of Nurse Anesthetists – 1988 |

| **Oral Presentations** | Achieving Aesthetic Excellence – 1992 to 2006 Public Education Seminars |
|---|---|
| | Controversies Concerning Silicone Breast Implants – December 1992 |